496 A.2d 407

**Lenore DiPIETRO, Administratrix of the Estate of Thomas DiPietro, Deceased,**

**v.**

**CITY OF PHILADELPHIA, Jenkins Elevator and Machine Co.**

**Appeal of CITY OF PHILADELPHIA.**

**Lenore DiPIETRO, Administratrix of the Estate of Thomas DiPietro, Deceased,**

**v.**

**CITY OF PHILADELPHIA, and Jenkins Elevator and Machine Co.**

**Appeal of JENKINS ELEVATOR AND MACHINE CO.**

Superior Court of Pennsylvania.

Argued May 7, 1984.

Decided June 28, 1985.

Reargument Denied Aug. 23, 1985.

John B. Day, Philadelphia, for appellant (at 00041), for appellee (at 00199).

John M. McNally, Jr., Philadelphia, for appellant (at 00199), for appellee (at 00041).

Before SPAETH, President Judge, and CAVANAUGH, WIEAND, CIRILLO, MONTEMURO, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

The issue on appeal is whether defendant City of Philadelphia (City) is entitled to judgment in the amount of $100,000 against additional defendant Jenkins Elevator and Machine Co. (Jenkins) because of the latter's failure to purchase a contractor's comprehensive liability insurance policy as required by the elevator service contract between them. In holding that the city is not so entitled, we affirm the order and judgment of the court below.

On December 5, 1980, a jury returned a verdict in favor of the plaintiff for $220,000 on her wrongful death action and $130,000 on her survival action against both defendants. The actions stemmed from a March 27, 1976 accident in which plaintiff's decedent fell to his death down an elevator shaft. Also on December 5th, the court awarded the City $100,000 as against Jenkins based on the clause quoted below. *See* N.T. December 5, 1980 at 570–74. After

post-trial motions were filed and argued, however, the court reversed itself and held that the City was not entitled to the $100,000. *See* Lower Court Opinion at 26–27. Instead, the court found that the right of contribution existed between the City and Jenkins as joint tortfeasors. *Id.* at 27–28. On December 9, 1981, the total award of $350,000 in damages was entered in plaintiff's favor and also amended to include $39,794.52 in delay damages. Both the City and Jenkins appealed from that judgment, and a three-judge panel of this Court affirmed in a Memorandum Opinion filed October 21, 1983. *DiPietro v. City of Philadelphia,* (Pa.Superior Ct.1983) (*per curiam*). Reargument before this Court *en banc* was granted solely on the issue presently before us.

The provision of the elevator service contract in question provides as follows:

> *Insurance—Contractor shall obtain and maintain in full force and effect covering the performance of the work under this contract, a Contractor's comprehensive liability insurance policy.* Said policy shall have minimum limits, unless otherwise specified, of $100,000/300,000 public liability and $25,000 property damage and *such insurance shall be endorsed with a hold harmless clause in favor of the City of Philadelphia.* Evidence of such insurance shall be furnished to the Department of Public Property before the work is begun.

(City's Exhibit 5 ¶ 3.11) (emphasis added). Both Jenkins and the City agreed that the interpretation of the clause was a question of law for the court to decide and that Jenkins did not, in fact, maintain a policy endorsed with a hold harmless clause in favor of the City. (N.T. December 8, 1980 at 582–83).

At first glance, the City would appear to be entitled to damages for Jenkins's failure to procure the stated policy.[1] "[O]ne who enters into an agreement to obtain insurance

---

1. Neither the City nor Jenkins argues the significance, if any, of the last sentence of the above-quoted provision, and thus we decline to consider it.

and neglects to fulfill his obligation becomes himself insurer and liable as such." *Zortman v. Volk*, 97 Pa.Superior Ct. 137, 140 (1929); *accord Hagan Lumber Co. v. Duryea School District*, 277 Pa. 345, 121 A. 107 (1923); *see generally* 18 G. Couch, *Couch on Insurance 2d* § 74:55 (rev. ed. 1983). Here, Jenkins was required to "obtain and maintain in full force and effect covering the performance of the work under this contract, a Contractor's comprehensive liability insurance policy." We note that these "policies are commonly issued to contractors insuring them against liability for damages or injuries occurring in connection with the performance of their contracts." 11 G. Couch, *Couch on Insurance 2d* § 44:344 at 520–21 (rev. ed. 1982) (footnote omitted); *see also Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 374, 243 A.2d 389, 394 (1968). "[B]roadly speaking, the so-called comprehensive provision of a [liability] policy covers loss or damage caused by any risk or peril other than those expressly excluded or excepted from coverage." *Gehrlein Tire Co. v. American Employers Insurance Co.*, 243 F.Supp. 577, 581 (W.D.Pa.1964), *aff'd per curiam*, 348 F.2d 918 (3d Cir.1965). Here, then, such a policy would be primarily for Jenkins's benefit, namely, to insure Jenkins against liabilities or damages arising from its performance of its elevator service contract with the City. Because the policy was to be "endorsed with a hold harmless clause in favor of the" City, however, the City would be entitled to indemnity. Thus, from the City's viewpoint, the policy would provide a fund from which the City could recover for any secondary liability imposed against it.

■■■ However, we find that, even if Jenkins *had* taken out a contractor's comprehensive liability policy, the City would not be able to recover the $100,000, the minimum limit under the policy, it seeks. Under Pennsylvania law, indemnity is disallowed if the indemnitee is actively negligent. *Lackowitz v. Socony Mobil Oil Co.*, 194 F.Supp. 146,

147–48 (E.D.Pa.1961); *Quinones v. Upper Moreland Township,* 187 F.Supp 260, 267 (E.D.Pa.1960), *aff'd in part and vacated in part,* 293 F.2d 237 (3d Cir.1961); *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.,* 404 Pa. 53, 62, 171 A.2d 185, 190 (1961) (indemnity disallowed where both parties were actively and primarily negligent). While it is not contrary to public policy for a party to contract for indemnification against its own torts, *Westinghouse Electric Co. v. Murphy, Inc.,* 425 Pa. 166, 173 n. 5, 228 A.2d 656, 660 n. 5 (1967), the language in the indemnity provision must be clear and unequivocal, and the burden of proof falls on the party seeking such relief; the burden is even greater where such party drafted the agreement. *Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc.,* 468 F.2d 597, 599 (3d Cir.1972); *see also Brown v. Moore,* 247 F.2d 711, 723 (3d Cir.), *cert. denied,* 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957); *Bush v. Chicago and Northwestern Transportation Corp.,* 522 F.Supp. 585, 587 (E.D.Pa. 1981); *Norfolk & Western Railway Co. v. Hardinger Transfer Co., Inc.,* 415 F.Supp. 507, 510 (W.D.Pa.1976), *remanded,* 558 F.2d 1028 (3d Cir.1977); *Consolidation Coal Co., Inc. v. Liberty Mutual Insurance Co.,* 406 F.Supp. 1292, 1299 (W.D.Pa.1976); *Fisher v. United States,* 299 F.Supp. 1, 23 (E.D.Pa.1969), *rev'd,* 441 F.2d 1288 (3d Cir.1971); *Baut v. Pethick Construction Co.,* 262 F.Supp 350, 363 (M.D.Pa.1966); *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., supra,* 404 Pa. at 57, 171 A.2d at 187; *Tidewater Field Warehouses, Inc. v. Fred Whitaker Co., Inc.,* 370 Pa. 538, 540–41, 88 A.2d 796, 797 (1952); *Perry v. Payne,* 217 Pa. 252, 262, 66 A. 553, 557 (1907); *Urban Redevelopment Authority v. Noralco Corp.,* 281 Pa.Superior Ct. 466, 471, 422 A.2d 563, 565–66 (1980); *Potts v. Dow Chemical Co.,* 272 Pa.Superior Ct. 323, 326, 415 A.2d 1220, 1221 (1979). In the instant case, while we are not interpreting an indemnity provision as such, but rather a provision to procure insurance which is to be endorsed with a hold harmless clause, we nonetheless believe that

these same principles are applicable because "to hold otherwise would be to put the indemnitor at the mercy of the indemnitee's negligent conduct...." *Quinones v. Township of Upper Moreland, supra* at 266 (footnote omitted).

■ Here, the lower court found that the City was actively negligent. (Lower Court Opinion at 25–26). Because this finding is not before us for review, it follows that there must be clear and unequivocal language in the provision to procure insurance indicating that the city was to be protected from loss resulting from its own negligence. This is especially so because the specification was drawn by the City. The City concedes that paragraph 3.11 of the specification does not require Jenkins to indemnify the City for the latter's own torts. *Cf. Westinghouse Electric Co. v. Murphy, Inc., supra* (language specifically referred to the negligence of the alleged indemnitee). The City's reliance on *Zortman, supra,* and *Hagan, supra,* is misplaced because, in those cases, the party claiming recovery was to be an *insured,* not an *indemnitee,* under the insurance policies which were to be procured. In *Zortman,* the plaintiff failed to assign a fire insurance policy to the defendants, and the defendants were awarded damages (for fire loss to a dwelling) measured by appraisers, because "[i]f the contract with the insurance policy had been in force, the loss recoverable under the policy would have been determined by the appraisers, as they were appointed in accordance with the terms of the policy." *Zortman v. Volk, supra* at 141. In *Hagan,* the defendant failed to maintain fire insurance on a school which the plaintiff was awarded a bid to erect. The insurance was "to be made payable to the parties hereto as their interests may appear." *Hagan Lumber Co. v. Duryea School District, supra* 277 Pa. at 346, 121 A. at 107. The plaintiff was allowed to recover the damages sustained by it when the building burned down.

We do not agree with the lower court in the instant case that the language of the provision indicates that the con-

tractor is liable for the City's active negligence, thereby rendering Jenkins an insurer, because the cost of the insurance was included in the contract price and thus was paid for by the City. *See* Lower Court Opinion at 27 n. 6, *citing Gulf Oil Corp. v. Mobile Drilling Barge or Vessel*, 441 F.Supp. 1 (E.D.La.), *aff'd*, 565 F.2d 958 (5th Cir.1975).[2] In *Gulf Oil*, the claimant was named as an *additional insured* under the policy at issue, *supra* at 6, whereas, here, the City was to be only an indemnitee under the insurance policy.

██ The City argues, instead, that, even assuming that its negligence may have been responsible for the elevator accident, Jenkins's liability is in itself legally adequate to impose additional liability on it as the elevator owner. In support of this argument, the City cites *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974), for the proposition that, if a jury enters a verdict against an elevator service contractor, it must necessarily enter one against an elevator owner who owes the public the "highest degree of care." Therefore, the City concludes, Jenkins is not being asked to insure the city against its own negligence, but rather to insure it for its liability "necessarily caused" by Jenkins's liability. This argument is flawed. While the City's proposition finds some support in *Gilbert, see id.*, 457 Pa. at 624–25 n. 4, 327 A.2d at 106 n. 4 (JONES, C.J., concurring), the fact remains that here *both* the City and Jenkins were negligent. The *Gilbert* court itself noted that the harm suffered in that case, namely, foot injuries to a young boy, could have been caused by the negligence of the elevator contractor, the elevator owner, or both. *Id.*, 457 Pa. at 615–16, 327 A.2d at 102. Indeed, the Court concluded that the jury's finding of joint negligence was supported by the evidence, but nonetheless awarded a new trial as to the contractor because of an erroneous jury charge. *Id.*, 457

---

**2.** The lower court still found, however, that the City was not entitled to judgment for its claim. We agree, but for the reasons stated in this opinion.

Pa. at 617–18, 327 A.2d at 102–03. In the instant case, the City, as a joint tortfeasor, remains *severally* liable for the injuries to plaintiff's decedent regardless of whether a judgment has been recovered against Jenkins. *See* 42 Pa.C.S.A. § 8322. Thus, its liability does not stem from the negligence of Jenkins, but, rather, from its own negligent acts. It is, of course, well established that a joint tortfeasor cannot recover indemnity from those who helped to cause the injury. *Builders Supply Co. v. McCabe,* 366 Pa. 322, 328, 77 A.2d 368, 371 (1951); *Lasprogata v. Qualls,* 263 Pa.Superior Ct. 174, 178 n. 2, 397 A.2d 803, 805 n. 2 (1979).

Therefore, we cannot find that the City is entitled to the $100,000 by virtue of Jenkins's failure to procure the comprehensive policy when liability would not exist even if Jenkins had taken out such a policy.[3] Such a result would be novel indeed. The City could have protected itself by requiring that it be named as an additional insured on the policy or that the contractor save harmless the City from its own negligence or that of its agents. Accordingly, we affirm.

Affirmed.

**3.** Our conclusion is reinforced by considering the indemnification provision contained in the contract. The lower court found that the provision, *see* City's Exhibit 8, did not provide for indemnity against injury caused by the City's negligence, *see* Lower Court Opinion at 16–26, and the City has not challenged that finding on reargument. We believe that the purpose of the insurance which Jenkins was to procure was to provide a fund to meet Jenkins's indemnity obligation under the indemnity agreement, hence the requirement that the insurance include a "hold harmless" clause. Thus, we do not agree with the City that it "does not need the insurance since it is already protected under the indemnity language" and that the contractual construction we have adopted would be perceived by a business person as "unrealistic, if not silly." (City of Philadelphia's Post-Submission Communication Brief at 4).