619 A.2d 285

**HERSHEY FOODS CORPORATION, Appellant,**

**v.**

**GENERAL ELECTRIC SERVICE CO.**

Superior Court of Pennsylvania.

Argued April 7, 1992.

Filed Nov. 19, 1992.

Reargument Denied Jan. 29, 1993.

144

C. Kent Price, Harrisburg, for appellant.

Dennis J. Bonetti, Harrisburg, for appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

BECK, Judge:

The issue is whether appellant Hershey Foods Corporation ("Hershey") is entitled to indemnification from appellee General Electric Service Company ("GESCO") under the terms of an electrical services contract.

Hershey brought this action seeking indemnification for the amount of damages it incurred as the result of an accident in its plant which caused the death of a GESCO employee. The trial court granted GESCO's motion for summary judgment, holding that Hershey was not entitled to indemnification under the facts of this case. The trial court also denied Hershey's cross-motion for summary judgment, and Hershey filed this timely appeal. For the reasons set forth below, we affirm.

In 1977, the parties entered into a contract, pursuant to which GESCO would perform certain electrical work in a plant owned by Hershey. The contract included Section 5.20 entitled "Indemnification," which provides:

5.20.1 [GESCO] shall indemnify and hold harmless [Hershey] and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss or[sic] use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of [GESCO], ... anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.

5.20.2 In any and all claims against [Hershey] or any of their agents or employees by any employee of [GESCO], ... anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this Paragraph 5.20 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or

for [GESCO] ... under workmen's compensation acts, disability benefit acts or other employee benefit acts.

5.20.3 The obligations of [GESCO] under this Paragraph 5.20 shall not extend to the liability of [Hershey], his agents or employees arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by [Hershey], his agents or employees provided such giving or failure to give is the primary cause of the injury or damage.

The "Work" to be performed by GESCO under the contract was defined as "electrical work throughout the plant as required by the engineering departments." *Standard Form of Agreement No. 160,* Section 1. Hershey drafted the contract, including the indemnification provision.

On April 6, 1978, an employee of GESCO, Robert W. Roland, Sr., was fatally injured while at work in Hershey's plant. Roland was employed by GESCO as a journeyman electrician, and was assigned to install electrical wiring conduits along the ceilings of the mezzanine level of Hershey's Building No. 40, in accordance with the contract between the parties. The work location was approximately 28 feet away from Elevator No. 37. Roland's work did not require that he use the elevator.

Elevator No. 37 is a pallet freight elevator that is automatically activated when a load is placed on a conveyor directly in front of the elevator car, interrupting a photoelectric beam, and causing the conveyor to move the load horizontally into the elevator car. The elevator then moves vertically, depositing its load at a pre-programmed floor above or below the mezzanine level. The evidence in the record established that there were no signs on or around the pallet elevator system explaining its use and automatic activation. Although the elevator was equipped with emergency devices which could deactivate the system and stop the car's movement, these devices were not labelled in any way. GESCO's employees were not instructed in the use of the pallet elevator system, as it was not expected that they would need to use it.

Roland worked with Arthur Poorman on the day of the accident. When lunch hour began, Roland indicated that he was going to take a nap and Poorman went to the cafeteria in the basement of the plant. When Poorman returned to the mezzanine level, he saw Roland walking toward the pallet elevator. Roland sat on the pallet conveyor to eat a candy bar. Poorman then heard the noise of the pallet conveyor motor, and turned to observe Roland being carried backwards by the pallet conveyor into the elevator car. As the elevator automatically began moving upward, Roland was struck in the back of the head by a cross bar located at the top of the elevator shaft and died.

Roland's estate filed suit against Hershey claiming that Hershey's negligence caused his death. One of the theories of recovery was Hershey's alleged failure to warn of the danger of the pallet elevator. The jury returned a verdict against Hershey in the amount of $561,018.95, and apportioned 90% of the negligence to Hershey and 10% to Roland. The parties eventually reached a structured settlement, and Hershey brought this lawsuit against GESCO seeking indemnification under the terms of the 1977 contract. GESCO's motion for summary judgment was granted, and Hershey's action for indemnification was dismissed as a matter of law.

We first note our scope of review in this appeal from summary judgment. A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035. We will overturn a trial court's entry of summary judgment only if there has been an abuse of discretion or an error of law. *McCain v. Pennbank,* 379 Pa.Super. 313, 549 A.2d 1311 (1988). Because the relevant facts were not in dispute, the case was ripe for summary judgment.

We are presented with the following questions of contract interpretation: (1) Did GESCO agree to indemnify Hershey even where Hershey was partly negligent; (2) Did GESCO waive its immunity to suit by an employee under the Work-

men's Compensation Act; (3) Did Roland's injury and death arise out of the "performance of the Work"; and (4) Is GESCO's obligation to indemnify Hershey superseded by the jury's finding that Hershey failed to warn of the dangers of the pallet elevator.

We find that GESCO did unambiguously contract to indemnify Hershey even where Hershey was partly negligent, and that GESCO did clearly waive its immunity to suit by an employee under the Workmen's Compensation Act. However, the contract between the parties is ambiguous with regard to whether Roland's death arose out of the performance of the electrical work. We must therefore construe the contract against the drafter, Hershey, and affirm the trial court's decision to dismiss Hershey's indemnification claim. Because of our decision on this issue, we do not reach the parties' final argument regarding the contract's "failure to instruct" exclusion.[1]

■ The Pennsylvania courts have long held "that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms." *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907). "No inference from words of general import can establish such indemnification." *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991). In the underlying tort action, a jury found Hershey, the indemnitee, to be 90% negligent. In order for a duty of indemnification to exist under these circumstances, the parties must have expressly contracted for it. We agree with the trial

1. The parties agreed in the contract that Hershey would not be entitled to indemnification where the damages arose out of "the giving of or the failure to give directions or instructions by [Hershey]." Section 5.20.3. GESCO asserts that the jury's finding of negligence in the underlying tort action was based on Hershey's failure to warn of the dangers of the pallet elevator system, and that this "failure to give directions or instructions" supersedes GESCO's indemnification obligation. It is not clear from the contract language that this type of "failure to warn" was intended to be excluded from the duty to indemnify. Nevertheless, we need not reach this issue because we decide on other grounds that Hershey is not entitled to indemnification.

court's holding that Hershey and GESCO did intend to contract for such indemnification.

The contract explicitly requires GESCO to indemnify Hershey against a loss caused "in whole or *in part* by any negligent act or omission of ... anyone directly or indirectly employed by [GESCO] ..., *regardless of whether or not it is caused in part by a party indemnified hereunder."* Section 5.20.1. In this case, the jury found both Hershey and GESCO's employee—the decedent—to have been negligent in causing the accident. The contract of the parties unambiguously provides for indemnification even where the indemnitee was negligent. *See Woodburn v. Consolidation Coal Co.,* 404 Pa.Super. 359, 590 A.2d 1273 (1991) (where there is express agreement, indemnitor is contractually bound to indemnify indemnitee who was less than 100% negligent); *Deskiewicz v. Zenith Radio Corp.,* 385 Pa.Super. 374, 561 A.2d 33 (1989) (same contract language found to provide indemnification to indemnitee who was partly negligent); *DiPietro v. City of Philadelphia,* 344 Pa.Super. 191, 496 A.2d 407 (1985) (it is not contrary to public policy for a party to contract for indemnification of its own torts, but contract language must be clear and unequivocal).

GESCO argues that it cannot properly be sued by Hershey in this indemnification action because Hershey is essentially "joining" GESCO as a third party defendant in the underlying tort claim by the estate of GESCO's employee. Appellee's Brief at 8–9. GESCO asserts that it is immune from such a claim under Section 303 of the Workmen's Compensation Act,[2] which provides in pertinent part:

In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third

---

**2.** The trial court did not address this issue in its opinion. Although we agree with the court's holding that Hershey is not entitled to indemnification, we believe that a discussion of GESCO's immunity argument is warranted.

party, *but the employer ... shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contribution, or indemnity shall be expressly provided for in a written contract* entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 Pa.S.A. § 481(b).

As set forth in the Workmen's Compensation Act, GESCO may not be held liable to indemnify Hershey unless the parties expressly contracted for such indemnification. *See, e.g., Remas v. Duquesne Light Co.,* 371 Pa.Super. 183, 537 A.2d 881 (1988) (indemnification clause in contract did not include express waiver of Section 303 immunity and no indemnification by third party defendant was required); *Gerard v. Penn Valley Const. Inc.,* 343 Pa.Super. 425, 495 A.2d 210 (1985) (general language regarding insurance policy to be obtained by contractor is not express waiver of Section 303 immunity).

As discussed above, the contract expressly provided that GESCO must indemnify Hershey under certain circumstances. The parties also agreed that "the indemnification obligation ... *shall not be limited in any way* by any limitation on the amount and type of damages, compensation or benefits payable by or for [GESCO] *under workmen's compensation acts,* disability benefit acts or other employee benefit acts." The contract's indemnification clause clearly constitutes a waiver of the statutory immunity otherwise provided by Section 303(b), and therefore, Hershey would be entitled to indemnification by GESCO if all other conditions set forth in the contract were met by the facts of this case. *Szymanski–Gallagher v. Chestnut Realty Co.,* 409 Pa.Super. 323, 597 A.2d 1225 (1991) (express waiver of 303(b) immunity unnecessary; clear indemnification obligation sufficient to hold employer liable to indemnify third party for injuries to employee); *Hall v. Goodman Co.,* 310 Pa.Super. 465, 456 A.2d 1029, 1036 (1983) (where there is an express agreement by employer to indemnify third party, employer may be joined in action by employee despite Section 303(b)).

■ The question now becomes whether the parties intended for the indemnification obligation to apply under the facts in this case. Section 5.20.1 of the contract provides that GESCO shall indemnify Hershey "against all claims, damages, losses and expenses including attorneys' fees *arising out of or resulting from the performance of the Work* ..." The "Work" is defined in the contract as the performance of "electrical work throughout the plant ..." Section 1, *Standard Form of Agreement.*

It is clear from the record that Roland was not in the process of performing electrical work when the accident occurred. *Cf. Deskiewicz, supra* (employee was injured while actually performing work described in contract); *Woodburn, supra* (same). Instead, he was on his lunch break and was sitting on the pallet conveyor while eating a candy bar. Hershey argues that Roland's lunch break was merely a "minor deviation for personal comfort or leisure" from the course of employment, and that we should therefore hold that the accident arose "out of the performance of the Work." *See, e.g., Lang v. Workmen's Compensation Appeal Bd.,* 108 Pa. Cmwlth 381, 529 A.2d 1161 (1987) (where there was no abandonment of the employer's business, activity was within course of employment); *D'Agata Nat'l Inc. v. Workmen's Compensation Appeal Bd.,* 84 Pa.Cmwlth. 527, 479 A.2d 98 (1984) (coffee break is within course of employment); *Workmen's Compensation Appeal Bd. v. Borough of Plum,* 20 Pa.Cmwlth. 35, 340 A.2d 637 (1975) (employee's break for lunch or to relieve himself was within course of employment).

These cases involved claims for benefits under the Workmen's Compensation Act. The Act provides broad coverage for "injury to an employee ... arising in the course of his employment." 77 Pa.S.A. § 411(1). In contrast, the contract uses the language, "arising out of or resulting from the performance of the work." The factual situations which have been included within the Act's definition of "course of employment" are broad and diverse. *See, e.g., Kovalchick Salvage Co. v. Workmen's Compensation Appeal Bd.,* 102 Pa.Cmwlth 562, 519 A.2d 543 (1986) (employees' stop for drinks on the

way home held to be within course of employment); *Workmen's Compensation Appeal Bd. v. United States Steel Corp.*, 31 Pa.Cmwlth. 329, 376 A.2d 271 (1977) (automobile accident caused by employee's epileptic seizure which occurred in employer's parking lot prior to employee's scheduled work time held to be within course of employment).

■ However, the cases cited by Hershey on this issue are inapposite. The Hershey–GESCO contract does not use the language of the Workmen's Compensation Act—"in the course of employment"—to describe the kinds of injuries that are included within GESCO's duty to indemnify. Instead, the contract expressly requires that the loss, in order to be indemnifiable, "arise out of the performance of the Work," which is specifically defined as electrical work. Moreover, this is not a dispute over workmen's compensation benefits, but rather a question about the proper interpretation of a written contract. Where there is ambiguity in a contract's terms, the doubtful language must be construed most strongly against the drafter, in this case, Hershey. *See Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986); *In re Estate of Breyer*, 475 Pa. 108, 379 A.2d 1305 (1977); *Raiken v. Mellon*, 399 Pa.Super. 192, 582 A.2d 11 (1990).

Because the contract does not clearly include Roland's conduct within the definition of "performance of the Work," and because the contract language is ambiguous with respect to this issue, it must be construed against Hershey. Therefore, Hershey is not entitled to indemnification from GESCO in this case. Because we so hold, we need not reach the fourth issue raised in this appeal, involving the exclusion for losses caused by Hershey's failure to give instructions or directions.[3]

Order affirmed.

OLSZEWSKI, J. files a dissenting statement.

3. *See* note 1, *supra.*

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. I find that the contract language "arising out of or resulting from the performance of the work," encompasses Roland's minor deviation from his duties. Roland's work for GESCO in this case required him to be in close proximity with the elevator which malfunctioned and caused his death. That Roland was taking a break as part of his lunch hour during the performance of the work is not, in my opinion, sufficient to take Roland's actions outside the contractual definition of "the work." Therefore, I would find that the indemnification obligation applies in this case.