# Deibert v. Pennsylvania Turnpike Commission

CP. of Lehigh County, no. 2006-C-0084.

*Victor F. Cavacini,* for plaintiffs.
*Brian R. Tipton,* for defendant Pa. Turnpike Commission.
*Paul G. Lees,* for defendant PA Gianni Homes Inc.
*Philip Daniel Priore,* for defendants Corrado Homes Inc., Minesite Road L.P. and Minesite LLC.
*John D. Kearney,* for defendant Lower Macungie Township.

Johnson, *J.,* June 15, 2010—

## INTRODUCTION

Before the court for consideration is the plaintiffs' first amended complaint filed June 5, 2006 and plaintiffs' second amended complaint filed August 5, 2009. A non-jury trial was held on September 21-25, October 2 and November 13, 2009. The court bifurcated the case, hearing all but the punitive damages claims and cross-claims.

## I. *Dedication*

### A. Findings of Fact

(1) On March 9, 2005, a deed of dedication was executed between defendant, Minesite Road L.P. as grantor, and the defendant, Lower Macungie Township (LMT), as grantee, wherein a drainage easement identified as tract 7—basin 1 on lot 55 was dedicated to LMT.

(2) The storm water management system, comprising basin 1, which was designed by Lehigh Engineering Associates on behalf of Corrado Homes Inc. and constructed and installed by Schlouch Inc., a Gianni Homes Inc. subcontractor, has not been dedicated to LMT.

(3) LMT is not an owner of the dedicated land or any improvements thereon.

## B. Conclusions of Law

Dedication does not vest a fee simple title in a municipality. In general terms, when property is dedicated, the public obtains an easement. The fee continues to be in the owner of the land, notwithstanding the public's right to use the dedicated property. See *Versailles Township Authority v. McKeesport,* 171 Pa. Super. 377, 90 A.2d 581 (1952). Therefore, it is clear that LMT is not a landowner of the subject drainage basin, subject to the rights and responsibilities associated therewith.

II. *Proposed Plan's Violation of the Storm Water Management Act, 32 P.S. §680.1, et seq. (SWMA), Little Lehigh Creek Watershed Act 167—Storm Water Management Plan Enacted Under the Storm Water Management Act, 32 P.S. §680.1, et seq. (Act 167) and the Subdivision and Land Developement Ordinance of Lower Macungie Township (SALDO)*

## A. Findings of Fact

(1) Corrado, as developer, sought and received subdivision and land development approval from LMT for the construction of single-family homes on approximately 54 lots known as the Corrado Homes development.

(2) Corrado assigned its right, title and interest under an agreement of sale to Minesite.

(3) The subject land is within a watershed known as the "Little Lehigh Creek Watershed."

(4) On January 15, 2004, LMT approved the Corrado Homes Subdivision under the SALDO which includes a storm water management ordinance.

(5) On or about March 16, 2005, Minesite conveyed a part of the Corrado Homes Subdivision, developed as phase I, to Gianni, who then renamed the part conveyed, "Hidden Valley Meadows."

(6) Corrado and Minesite installed the storm water management facilities, as designed and approved, located within the Corrado Homes development.

(7) Gianni installed the storm water management facilities, as designed and approved, located within the Hidden Valley Meadows development.

(8) The storm water management system, as designed, approved and installed, has substantially increased the volume of surface water onto land owned by the plaintiffs, William F. Deibert and Alma Deibert, husband and wife and Michael P. Borowski and Pamela Borowski, husband and wife which has caused significant injury and damage that continues to the present day.

(9) Prior to the Corrado Homes and Hidden Valley Meadows developments being created, 15.11 acres of land within the watershed occupied by those developments drained to lands of Deibert and Borowski.

(10) After the Corrado Homes and Hidden Valley Meadows developments were created, an additional 32.7244 acres of land drained to the lands of Deibert and

Borowski, which increased the land area flowing to Deibert and Borowski by 300 percent.

(11) Corrado made no downstream analysis. There are no public storm sewers or other storm water conveyance facilities on the lands of Deibert and Borowski.

(12) The storm water management facilities, as designed, approved and installed, are not adequate to reasonably manage substantial increases in volume of surface water created by the Corrado Homes and Hidden Valley Meadows developments.

(13) The discharge of surface water from the land owned by Gianni and Minesite empties into land owned by the Pennsylvania Turnpike Commission and is channeled by concrete pipes and empties onto land owned by Deibert and Borowski.

(14) A substantial area of land originally drained to closed depressions located on land now known as the Hidden Valley Meadows development.

(15) A "closed depression" is an area that is low-lying and has no surface water outlet, therefore retaining storm water that flows into it.

(16) Minesite and Gianni accomplished the redirection of off-site storm water onto the lands of Deibert and Borowski as the result of earth moving that created diversion berms and a system of storm water inlets and pipes that transport surface water to detention basin number 1, then through the Pennsylvania Turnpike Commission pipes and then onto the lands of Deibert and Borowski.

(17) The storm water management system, as designed, approved and installed, contains a diversion berm disguised as a planting buffer adjacent to Minesite Road

(SR2015) that causes surface water to be interrupted from its natural flow and be diverted into the pipes, basins, streets and detention pond of the Corrado Homes and Hidden Valley Meadows developments that eliminates natural percolation and dissipation into the soil and causes a substantial increase in the volume of surface water onto lands of Deibert and Borowski.

(18) The storm water management plan, as designed, improved and installed, incorporates artificial facilities consisting of diversion berms, pipes, inlets, detention basins and other means, to channel surface water onto lands of Deibert and Borowski.

(19) Storm events are categorized based on how often a similar rain event will recur.

(20) The volume of water discharged onto the lands of Deibert and Borowski for a two year storm, 10-year storm, 25-year storm and 100-year storm has been substantially increased by the storm water management facilities, as designed, approved and installed.

(21) The post-development volume associated with a 10-year storm (5.99 acre feet) is now the equivalent of a 100 year storm (5.56 acre feet) pre-developments. So, whereas, pre-development, the volume was such that it would return every 100 years on average, now that same volume will return every 10 years on average.

(22) Even though design standards under the SALDO call for the management of rain storm predicated on 100 year and greater storms, the storm water management facilities fail in minor rain storm events.

(23) The average increase in volume for subdivision and land development associated with a residential use is 17 percent.

(24) The surface water that was originally allowed to collect and seep into the closed depressions is now artificially channeled into storm sewers and, as diverted by the berm herein identified, the volume of surface water directed onto the lands of Deibert and Borowski has been increased by 170 percent.

(25) The storm water management system, as designed, approved and installed, at the Hidden Valley Meadows and Corrado Homes developments substantially increases the volume of storm water onto the lands of Deibert and Borowski, which has caused significant injury and continues to the present day.

(26) At various times, the region in which the subject properties are located experienced rainfall events, and as a result of the storm water management system, as designed, approved and installed, the volume of surface water caused a deluge of water onto land owned by Deibert and Borowski that caused a stream to form on their land, creating a serious safety hazard to persons, and causing substantial injury and damage to the lands of Deibert and Borowski.

(27) Given the underlying soil on the lands of Deibert and Borowski, classified as Washington silt loam, the increased volume of water from the Corrado Homes and Hidden Valley Meadows developments created by the storm water management plan, as designed, approved and installed, channeled through the Pennsylvania Turnpike Commission pipe and has created surface water conditions that will promote the formation of sink holes on lands of Deibert and Borowski.

(28) As a result of the continuous flow of storm water onto the land of Deibert, three sinkholes have formed.

(29) As a result of the deluge of surface water occasioned by the storm water management facilities, as designed, approved and installed, the lands of Deibert and Borowski have been rendered unsafe to pedestrian and vehicular travel during periods of significant rainfall.

(30) The storm water management facilities, as designed, approved and installed, have failed.

(31) The storm water management facilities, as designed, approved and installed, have created an emergency and, in the opinion of this court, the circumstances of this case require immediate abatement.

(33) The storm water management facilities, designed, approved and installed as part of the subdivision process, are defective, and violate applicable ordinances, regulations and statutes and liability arises to Deibert and Borowski for acts and/or omissions related thereto.

(34) The SALDO requires a storm to return to normal conditions, *i.e.* "dewatering," within 12 hours after a storm ends. The storm water management facilities, as designed, approved and installed, do not result in a "dewatering" in 12 hours. The "dewatering" times range from 24.85 hours to 34.30 hours, so Deibert and Borowski continue to receive storm water beyond the time permitted by the SALDO.

(35) The elongation of the "dewatering" time of the detention pond results in a violation of Act 167 release rate criteria.

(36) The storm water management facilities, as designed, approved and installed, fail to meet design standards contained in Act 167.

(37) The storm water facilities, as designed, approved and installed, violate the Storm Water Management Act,

32 P.S. §680.1, et seq. (SWMA) by virtue of the facilities' violation of Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

(38) The court finds the testimony of Chris Kerkusz, Robert Doll, Adrianne Doll, Richard Lands, Donald Dries, Michael Borowski, Louis F. Vittorio Jr., Grayson McNair and William E. Deibert credible.

(39) The court finds the testimony of William Erdman of low credibility due to the manner and content of his testimony. He repeatedly talked around questions, was somewhat defensive and continually qualified his answers when on cross-examination.

(40) Gianni and Corrado did everything LMT required of them.

### B. Conclusions of Law

*1. Storm water management act,*
*32 P.S. §680.1, et seq. (SWMA)*

The stated policy and purpose of the SWMA is to:

"(1) Encourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices.

"(2) Authorize a comprehensive program of storm water management designated to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current and cross-section of water of the Commonwealth; and to protect and conserve ground waters and ground-water recharge areas.

"(3) Encourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the environment." 32 P.S. §6803.

The legislative scheme of the SWMA requires that each county in the Commonwealth prepare and adopt a watershed storm water management plan for each watershed in the county. 32 P.S. §680.5.

The SWMA requires that once a watershed storm water plan is adopted and approved, that "each municipality shall adopt or amend, and shall implement such ordinances and regulations . . . as are necessary to regulate development within the municipality in a manner consistent with the applicable watershed storm water plan and the provisions of this act" 32 P.S. §680.11.

Section 14 of the SWMA entitled, "Duty of persons engaged in the development of land" states:

"any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures consistent with the provisions of the applicable watershed storm water plan . . . (2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury." 32 P.S. §680.13.

The definition of "person" is:

"An individual, partnership, public or private association or corporation . . . municipality . . . which is recog-

nized by law as the subject of rights and duties. Wherever used in any section prescribing or imposing a penalty, the term 'person' shall include the members of a partnership, . . . the officers, members, servants and agents of an association, officers, agents and servants of a corporation, and the officers of a municipality . . . ." 32 P.S. §680.4, definitions.

## 2. *Little Lehigh Creek Watershed—Act 167—Storm Water Manditzement Plan (Act 167)*

The watershed storm water management plan applicable to the within matter is Act 167.

Section 108, duty of persons engaged in the development of land, provides:

"any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures as are reasonably necessary to prevent injury to health, safety or other property. Such measures shall include such actions as are required to manage the rate, volume and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury."

Section 301, general requirements, states:

"C. . . . If diffused flow is proposed to be concentrated and discharged onto adjacent property, the developer must document that there are adequate downstream conveyance facilities to safely transport the concentrated discharge or otherwise prove that no harm will result from the concentrated discharge . . . .

"G. Storm drainage facilities and appurtenances shall be so designed and provided as to minimize erosion in watercourse channels and at all points of discharge.

"H. Consideration should be given to the design and use of volume controls for storm water management, where geology and soils permit. Areas of suitable geology for volume controls shall be determined by the municipality. Documentation of the suitability of the soil for volume controls shall be provided by the applicant. Volume controls shall be acceptable in areas of suitable geology where the soils are designated as well as drained in the County Soil Survey. Other soils may be acceptable for use of volume controls based on site-specific soils evaluation provided by the applicant."

The foregoing standards are designed to avoid harm to adjoining landowners. The municipality is empowered to regulate these activities by the SWMA.

The storm water maintenance facilities of the Corrado Homes and Hidden Valley Meadows developments, as designed, approved and installed, violate section 108 of Act 167 as no volumetric considerations were required or proposed.

Corrado made no downstream analysis. There are no public storm sewers or other storm water "conveyance facilities" on lands of Deibert and Borowski. Therefore, the subdivision plan for Corrado Homes and Hidden Valley Meadows, as designed, approved and installed, violated section 301.C of Act 167.

The storm water maintenance facility, as designed, approved and installed, does not "minimize erosion in watercourse channels and at all points of discharge" and

does not evidence "suitable geology for volume controls." Therefore, the storm water maintenance facilities, as designed, approved and installed, violate sections 301.G and 301.H of Act 167.

### 3. *LMT subdivision and land development ordiances (SALDO)*

LMT enacted various Subdivision and Land Development Ordinances (SALDO) containing storm water management regulations. The sections of the SALDO violated by the storm water management facilities, as designed, approved and installed in this matter, are:

"Section 771.6—Prevent overloading of downstream drainage systems and water courses as a result of increased rate of runoff caused by the proposed development;

"Section 772.3—No storm water runoff or natural drainage shall be so diverted as to overload existing drainage systems, or create flooding or the need for additional drainage structures on other private properties or public lands;

"Section 774.3.1—Detention ponds shall be designed so that they return to normal conditions within approximately 12 hours after the termination of the storm, unless the township engineer finds that downstream conditions may warrant other design criteria for storm water release;

"Section 774.3.1—The developer shall verify that the operation of the detention facilities will not aggravate potential downstream peaking conditions;

"Section 774.3.2—The developer shall demonstrate that such [detention] ponds are designed, protected and

located to assure that public safety is maximized and health problems are prevented;

"Section 774.3.3—The developer shall verify that the operation of the detention facilities will not aggravate potential downstream peaking conditions;

"Section 774.3.4—Emergency overflow facilities shall be provided for detention facilities to handle runoff in excess of design flows;

"Section 791.1.2—Measures used to control erosion and reduce sedimentation shall meet the standards and specifications of the Lehigh County Conservation District as set forth in the County Erosion and Sediment Control Handbook. The township engineer, or other officials as designated, shall ensure compliance with the appropriate specifications, copies of which are available from the district; and

"Section 791.3.1.8—Grading will not be done in such a way as to divert water onto the property of other landowners without the written consent of the landowners."

Therefore, the court finds that the storm water management facilities, as designed, approved and installed in this matter, violate the SWMA by virtue of the facilities' violation of Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

### III. *Direct Liability of Corrado and Minesite and Gianni*

### A. Findings of Fact

(1) The Corrado Homes Subdivision was comprised of two developments: the Hidden Valley Meadows development and the Corrado Homes development.

(2) Gianni developed the Hidden Valley Meadows development of the Corrado Homes Subdivision.

(3) Minesite developed the Corrado Homes development of the Corrado Homes Subdivision.

(4) The August 26, 2003 application for an individual National Pollutant Discharge Elimination System (NPDES) permit for storm water discharge associated with construction activities was submitted by Corrado containing inaccurate information on storm water runoff volumes. The application shows an increase in volume of .273 acre feet, or an approximate 17 percent increase in runoff volume. According to the storm water management plan submitted by Corrado and approved by LMT, the total volume generated by a two-year storm is 2.508 acre feet for an increase in volume of 170 percent, not 17 percent.

## B. Conclusions of Law

Any claim by the plaintiffs for relief based upon misrepresentations in the NPDES permit application is denied because the amended complaint did not contain a cause of action based thereon.

Corrado obtained all necessary permits and approvals for the subdivision plan, specifically the storm water management facilities.

Corrado reasonably relied on said approvals in installing the storm water management system as designed and approved.

Corrado is not liable for the storm water management facilities' (as designed, approved and installed) violation of the SWMA by virtue of the facilities' violation of Act

167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

Because Gianni was not responsible for obtaining the approvals and permits necessary for Gianni to develop the Hidden Valley Meadows Development, Gianni reasonably relied on Corrado's receipt of same and Gianni is not liable for violation of the SWMA by virtue of the facilities' violation of Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

## IV. *Immunity and LMT*

### A. Findings of Fact

(1) The SWMA creates a statutory cause of action.

(2) The Sovereign Immunity Act creates an exception to sovereign immunity where damages are recoverable in a statute creating a cause of action.

(3) Causes of action in this case arise out of a negligent act of LMT where the damages would be recoverable under a statute creating a cause of action, the SWMA.

### B. Conclusions of Law

The enforcement mechanism contained in the SWMA is the right given to "any aggrieved person" to injunctive relief as well as to recover damages caused by a violation from a "landowner or other responsible person." 32 P.S. §680.15.

Section 15 of the SWMA states, relevant part, that:

"(a) Any activity conducted in violation of the provisions of this act or of any watershed storm water plan,

regulations or ordinances adopted hereunder, is hereby declared a public nuisance.

"(b) Suits to restrain, prevent or abate violations of this act or of any watershed storm water plan, regulation or ordinance adopted hereunder, may be instituted in equity or at law by any aggrieved person. Except in cases of emergency where, in the opinion of the court, the circumstances of the case require immediate abatement of the unlawful conduct, the court may, in its decree, fix a reasonable time during which the person responsible for the unlawful conduct shall correct or abate the same. The expense of such proceedings shall be recoverable from the violator in such manner as may now or hereafter be provided by law.

"(c) Any person injured by conduct which violates provisions of section 14 may, in addition to any other remedy provided under this act, recover damages caused by such violation from . . . [the] responsible person." 32 P.S. §680.15.

Clearly, the SWMA creates a statutory remedy and the Sovereign Immunity Act provides that:

"The General Assembly . . . does hereby waive . . . sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages could be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. §8522(a).

Therefore, the court finds that Lower Macungie Township is not immune from suit in this case.

## V. *Statutory Liability of LMT*

### A. Findings of Fact

(1) The storm water maintenance facilities, as designed, violate the SWMA by virtue of the facilities' violation of Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

(2) LMT relies heavily on the Pennsylvania Department of Environmental Protection's approval of the NPDES permit application and the Lehigh Valley Planning Commission's review analysis of a proposed plan's compliance with Act 167 in deciding whether to grant plan approval under Act 167.

(3) LMT has the responsibility under the SWMA, Act 167 and the SALDO to approve only those storm water management facilities that are in compliance with the SWMA, Act 167 and the SALDO.

(4) LMT is mandated to approve only those plans that are in accordance with design characteristics required under SALDO and Act 167.

(5) LMT had a duty under the SWMA to manage surface water runoff consistent with ground water and land use practices so as to preserve to the maximum extent practicable natural storm water runoff and to preserve the health, safety and welfare of the public by approving only those storm water management facility designs that are in compliance with the SWMA, Act 167 and the SALDO.

(6) LMT owed a duty to Deibert and Borowski to require Gianni, Corrado and Minesite to install surface

water management facilities adequate to meet all of the design characteristics contained in SALDO, the SWMA and Act 167.

(7) LMT was negligent in failing to require Gianni, Corrado and Minesite to construct storm water management facilities in accordance with the SALDO, the SWMA and Act 167.

(8) LMT violated the SWMA, Act 167 and the SALDO in approving the storm water management facilities of the Subdivision Plan.

## B. Conclusions of Law

Section 103 of Act 167, statutory authority, states that, "The municipality is empowered to regulate these activities by the authority of the [SWMA] and the [appropriate municipal code]."

Section 405 of Act 167, drainage plan review, mandates the obligations of a municipality and its engineer, as follows:

"A. The municipal engineer shall review the drainage plan for consistency with [Act 167] and against any additional storm drainage provisions contained in the municipal subdivision land development or zoning ordinance, as applicable.

"B. The municipality shall not approve any subdivision or land development (regulated activities 104.A and I04.D) or building permit application (regulated activities 104.C and 104.D) if the drainage plan has been found to be inconsistent with the storm water management plan as determined by the municipal engineer.

Although it is the custom of LMT to rely on the NPDES permit and the findings of the Lehigh Valley Planning Commission, under Act 167, the SWMA and the SALDO, it ultimately is LMT's responsibility to fully review the proposed plans for compliance with its SALDO and Act 167. LMT was negligent in its review of the storm water management plan submitted by Corrado and as a result of the approval of the inadequate storm water management plan, and the subsequent installation of the storm water management facilities in the Corrado Homes and Hidden Valley Meadow subdivision, the land of Deibert and Borowski has suffered serious damage as the result of excessive volumes of surface water runoff from the said subdivisions and injury and damages are continuing to this day.

LMT is liable for violating the SWMA by virtue of its approval of the storm water facilities' plan that violates Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

VI. *Indemnification*

A. Findings of Fact

(1) Prior to commencing any construction, both Minesite and Gianni were required by LMT to execute a "subdivision improvement agreement."

(2) The subdivision improvement agreement contains an indemnification provision that reads as follows:

"A. Developer hereby agrees to exonerate, indemnify and save harmless the township . . . from any and all claims, actions, awards, verdicts and judgments, together with reasonable counsel fees, based upon or aris-

ing out of the approval of any and all aspects of the design, construction or development of the said subdivision and land development . . . specifically including the design, construction and maintenance of storm water drainage facilities, for damages . . . to person or properties caused by or sustained in connection with the design, construction and development of said subdivision and land development, developer's performance under the subdivision improvement agreement and the subdivision maintenance agreement, and any conditions created by the aforesaid design, construction or development; and if requested by the township, to assume without expense to township, the defense of any claims or actions against the township arising out of any of the approvals made by the township of subdivision designs . . . ."

(3) The indemnification language contained in the subdivision improvement agreement does not specifically state that Minesite and Gianni agreed to indemnify LMT for LMT's own negligence.

## B. Conclusions of Law

The court must strictly construe the scope of the indemnity contract against LMT and must determine the intention of the parties. See *Jacobs Constructors Inc. v. NPS Energy Services Inc.,* 264 F.3d 365 (3d Cir. 2001).

An indemnity agreement that covers loss due to the indemnitee's own negligence must be clear and unequivocal. *Id.* (citing *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907). "[T]here can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation.

No inference from words of general import can establish it." *Perry, supra* at 262, 66 A. at 557; see also, *Ruzzi v. Butler Petroleum Company*, 527 Pa. 1, 588 A.2d 1 (1991).

Further, the indemnification contract must be construed against LMT, the party who construed the contract and is seeking indemnification for its own negligence. Any ambiguities in the contract, or silence on an issue, must be construed against LMT. See *Ratti v. Wheeling Pittsburgh Steel Corporation*, 758 A.2d 695, 702 (Pa. Super. 2000); *Hershey Foods Corporation v. General Electric Service Co.*, 422 Pa. Super. 143, 149, 619 A.2d 285, 288-290 (1992), *appeal denied*, 536 Pa. 643, 639 A.2d 29 (1993)(citing *Ruzzi, supra*).

Because the indemnification language contained in the January 21, 2005 agreement does not contain express language that Minesite and Gianni agreed to indemnify LMT for LMT's own negligence, LMT's claim for indemnification fails.

## VII. *Pennsylvania Turnpike Commission*

### A. Findings of Fact

(1) On or about April 17, 1959 Iva Deibert (plaintiff William F. Deibert's mother) and plaintiff William F. Deibert settled and conveyed the condemned portion of their property located on East Texas Road (Deibert property) by deed to the Pennsylvania Turnpike Commission.

(2) As part of the settlement, the Deiberts received $8,000 and executed a release on behalf of the Pennsylvania Turnpike Commission which included, but was not limited to, the Pennsylvania Turnpike Commission's right to discharge storm water onto the Deibert property.

(3) Said release was filed with said deed and states in relevant part that the Deiberts "do remise, release, quitclaim, and forever discharge the Pennsylvania Turnpike Commission, . . . , of and from any and all actions, rights of action, suits, demands, claims and damages of every type and character whatsoever which in law of equity we ever had, now have or may hereafter have for or on account of the right to damages heretofore accruing to" the Deiberts.

(4) In addition, within the deed, the Deiberts made the following representation: "grantors release, quitclaim and forever discharge the grantee, . . . from any and all . . . claims and damages . . . by reason of construction, operation and maintenance of the Turnpike through or upon the land herein conveyed and any incidental or consequential damage to any remaining portion of the lands."

(5) Therefore, based on the deed and release, the Pennsylvania Turnpike Commission had the legal authority to discharge storm water from its property, and in the manner in which it has done so, since 1959.

(6) No special site development considerations were given to the downstream landowners, Pennsylvania Turnpike Commission and the plaintiffs, by Corrado, Minesite and Gianni.

(7) The grading of the Corrado Homes Subdivision resulted in filling in and draining of closed depressions, diverting storm water to the Pennsylvania Turnpike and the lands of the plaintiffs.

(8) No one contacted the Pennsylvania Turnpike Commission regarding the Corrado Homes Subdivision's

storm water management during its planning, approval process or construction.

(9) The Pennsylvania Turnpike Commission did not give Corrado, Minesite or Gianni approval or consent to change the natural course of storm water drainage onto the Pennsylvania Turnpike's property.

(10) The Pennsylvania Turnpike Commission did not give Corrado, Minesite or Gianni approval or consent to collect storm water on its property and direct the discharge of same directly at the Pennsylvania Turnpike's 48 inch pipe.

(11) The Pennsylvania Turnpike Commission did not give Corrado, Minesite or Gianni approval to triple the volume of storm water discharged onto its property.

(12) From the date the Pennsylvania Turnpike was originally constructed to the present date, the Pennsylvania Turnpike Commission has taken no action through maintenance or additional construction to increase the storm water runoff from its roadway or adjoining properties near the Deibert property.

## B. Conclusions of Law

Based on the foregoing findings of fact, the court finds that the defendant, Pennsylvania Turnpike Commission, is not liable for any violations of the common law, the SWMA, Act 167 or the SALDO.

## VIII. *Trespass As To All Defendants*

The court finds that none of the defendants are liable under a common-law trespass theory.

## IX. *Conclusion*

For the reasons set forth above, the court finds that the defendants, Pennsylvania Turnpike Commission, P.A. Gianni Homes Inc., Corrado Homes Inc. and Minesite Road L.P., are not liable for violation of the SWMA by virtue of the Corrado Homes Subdivision storm water management facilities' violation of Act 167 and the SALDO, which were enacted pursuant to, and in furtherance of, the SWMA.

Additionally, the court finds no liability as to any of the defendants under the common-law theory of trespass.

However, the court finds that the defendant, Lower Macungie Township, is liable to Deibert and Borowksi under the SWMA due to its violation of that Act and further finds that Deibert and Borowksi are entitled to certain statutory remedies set forth therein. This court finds that an emergency exists and that immediate abatement is warranted.

Verdict is entered in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts I, II and III. Verdict is entered in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XVIII, XIX and XX.

Verdict is entered in favor of the defendant, P.A. Gianni Homes, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts IV, V and VI.

184

Verdict is entered in favor of the defendant, P.A. Gianni Homes, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XXI, XXII and XXIII.

Verdict is entered in favor of defendant, Corrado Homes, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts VII, VIII and IX. Verdict is entered in favor of defendant, Corrado Homes, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XXIV, XXV and XXVI.

Verdict is entered in favor of the defendant, Minesite Road, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts X, XI and XII. Verdict is entered in favor of the defendant, Minesite Road, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XXVII, XXVIII and XXIX.

Verdict is entered in favor of the defendant, Lower Macungie Township, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts XIV and XVI. Verdict is entered in favor of the defendant, Lower Macungie Township, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XXXI and XXXIII.

Verdict is entered in favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendant, Lower Macungie Township, on Counts XIII and XV.

Verdict is entered in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and

against the defendant, Lower Macungie Township, on Counts XXX and XXXII.

Defendant, Lower Macungie Township, shall:

(1) Within one year of the date of this decision, correct or abate the conditions resulting from the township's unlawful conduct and by installing those storm water facilities required to alleviate the surface water problems described in the plaintiffs' first amended complaint and second amended complaint, in a manner consistent with common law, the Lower Macungie Subdivision And Land Development Ordinance, and all other applicable statutes, laws and regulations, and especially to alleviate problems created by the installation of artificial facilities described in the first amended complaint and second amended complaint, and to immediately remediate acts, facilities and conditions causing damage to the plaintiffs' land and pay all costs associated therewith;

(2) Within 60 days of the date of this decision, submit to the undersigned a plan and design to install a storm water extension from the Corrado Homes detention pond to the nearest appropriate detention pond in such a manner as to minimize the effect thereof on the lands of Deibert and Borowski (remediation plan).

The court will hold a conference with counsel for the plaintiffs and Lower Macungie Township to review the remediation plan on Monday, September 13, 2010 at 9:30 A.M. in Courtroom 5B of the Lehigh County Court of Common Pleas.

## ORDER

And now, June 15, 2010, it is ordered that, based upon the findings of fact and conclusions of law set forth in the accompanying opinion:

Verdict is entered in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts I, II and III. Verdict is entered in favor of the defendant, Pennsylvania Turnpike Commission, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XVIII, XIX and XX.

Verdict is entered in favor of the defendant, P.A. Gianni Homes, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts IV, V and VI. Verdict is entered in favor of the defendant, P.A. Gianni Homes, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XXI, XXII and XXIII.

Verdict is entered in favor of defendant, Corrado Homes, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts VII, VIII and IX. Verdict is entered in favor of defendant, Corrado Homes, and against the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, on Counts XXIV, XXV and XXVI.

Verdict is entered in favor of the defendant, Minesite Road, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts X, XI and XII. Verdict is entered in favor of the defendant, Minesite Road, and against the plaintiffs, Michael P. Borowski

and Pamela Borowski, husband and wife, on Counts XXVII, XXVIII and XXIX.

Verdict is entered in favor of the defendant, Lower Macungie Township, and against the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, on Counts XIV and XVI. Verdict is entered in favor of the defendant, Lower Macungie Township, and against the plaintiffs, Michael Borowski and Pamela Borowski, husband and wife, on Counts XXXI and XXXIII.

Verdict is entered in favor of the plaintiffs, William F. Deibert and Alma Deibert, husband and wife, and against the defendant, Lower Macungie Township, on Counts XIII and XV.

Verdict is entered in favor of the plaintiffs, Michael P. Borowski and Pamela Borowski, husband and wife, and against the defendant, Lower Macungie Township, on Counts XXX and XXXII.

Defendant, Lower Macungie Township, shall:

(1) Within one year of the date of this decision, correct or abate the conditions resulting from the township's unlawful conduct and by installing those storm water facilities required to alleviate the surface water problems described in the plaintiffs' first amended complaint and second amended complaint, in a manner consistent with common law, the Lower Macungie Subdivision And Land Development Ordinance, and all other applicable statutes, laws and regulations, and especially to alleviate problems created by the installation of artificial facilities described in the first amended complaint and second amended complaint, and to immediately remediate acts, facilities and conditions causing damage to the plaintiffs' land and pay all costs associated therewith;

188

Within 60 days of the date of this decision, submit to the undersigned a plan and design to install a storm water extension from the Corrado Homes detention pond to the nearest appropriate detention pond in such a manner as to minimize the effect thereof on the lands of Delbert and Borowski (remediation plan).

The court will hold a conference with counsel for the plaintiffs and Lower Macungie Township to review the remediation plan on Monday, September 13, 2010 at 9:30 A.M. in Courtroom 5B of the Lehigh County Court of Common Pleas.