# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solid Waste Services, Inc. d/b/a          :
J.P. Mascaro & Sons and M.B.              :
Investments and Jose Mendoza,             :
                    Appellants            :
                                          :    No.  1748 C.D. 2016
            v.                            :
                                          :    Argued:  May 2, 2017
City of Allentown and Waste               :
Management of Pennsylvania, Inc.          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  July 20, 2017


          Solid Waste Services, Inc., J.P. Mascaro & Sons and M.B.
Investments (Mascaro) and Jose Mendoza (collectively, Appellants) appeal from
the September 19, 2016 order of the Court of Common Pleas of Lehigh County,
Pennsylvania, Civil Division (Trial court) denying Appellants' request for a
permanent injunction that sought to void the contract for solid waste and
recyclables collection, disposal, and related services between the City of
Allentown (City) and Waste Management of Pennsylvania, Inc. (WMI), prevent
WMI from performing the contract, prohibit the City from awarding the contract to

any of the proposers under the City's Request for Proposals (RFP), and remand the matter so that a contract could be awarded after a competitive bidding process.

## Background

In 2006, the City entered into a ten-year municipal solid waste and recyclables contract, which was set to expire in June 2016. In December 2014, the City engaged Gershman, Brickner & Bratton, Inc. (GBB), a waste management consulting firm, to develop a practical and cost-effective arrangement for the City's waste and recycling program that would offer new advancements. GBB recommended utilizing a flexible, value-added RFP rather than the fixed invitation to bid (ITB) process the City had previously used. The City's Purchasing Department and Bureau of Recycling and Solid Waste authorized the RFP process.

On September 9, 2015, a mandatory pre-proposal conference was held, at which all parties interested in submitting an RFP were required to attend. Both Mascaro and WMI attended the conference.

On September 29, 2015, Mascaro's attorney sent a letter to the City's Mayor, Finance Director, Purchasing Agent, and Solicitor requesting that the RFP be cancelled and withdrawn because the procedure was unlawful and contrary to the City Code and City Administrative Code.

On October 2, 2015, the City issued Addendum No. 3, replacing Section 3.3 of RFP #2015-24. In pertinent part, Addendum No. 3 provides:

> The City of Allentown reserves the right to request additional information from any Proposer and the right to waive minor irregularities in the procedures or proposals if it is deemed in the best interests of the City of Allentown. The City further reserves the right to reject all Proposals and seek new proposals when such

2

procedure is considered to be in the best interest of the City.

(Finding of Fact No. 36).

Further, Addendum No. 3 replaced Section 3.4 of RFP #2015-24 and stated:

> The award will be made to that responsive and responsible Proposer whose Proposal, conforming to the specifications, will be most advantageous to the City; price and other factors considered. The prices submitted by the Proposer on the Forms in Appendix VI are firm and final and the award shall be made to the lowest responsible and qualified Proposer based on the Options selected by the City.

(Finding of Fact No. 37). The Addendum also added that any references to "bid" or "bidder" shall be replaced with "proposal" or "proposer."

On October 15, 2015, the City announced that there were seven proposers that responded to the RFP. Five proposers submitted proposals, including Mascaro and WMI, and two declined to submit a proposal. The prices of each proposal were not opened, but given to the City's Purchasing Department.

On October 16, 2015, Mascaro's attorney sent another letter to the City's Purchasing Agent, demanding that "the City immediately provide [Mascaro] with copies of the Cost Proposals submitted by each of the bidders . . . since the City did not open, read or disclose the bid amounts as required, and since it has not made those bid numbers available for public inspection." (Finding of Fact No. 45.)

On October 19, 2015, three proposers were shortlisted for consideration of the contract, including both Mascaro and WMI. After approval by an evaluation committee, WMI was awarded the contract by letter dated October

3

30, 2015, contingent on approval by the City Council. The City sent Mascaro a rejection letter on October 30, 2015.

On November 4, 2015, Mascaro's attorney spoke at a regular public meeting of the City Council and, on November 6, 2015, sent a letter to the President of the City Council and all City Council members.

On November 30, 2015, the City Council held a special meeting, where a request for approval for the contract award was presented. Mascaro's Attorney spoke to the City Council about his concerns regarding the RFP process. By a six-to-one vote, consideration of approval of the contract award was tabled.

The matter was reconsidered on December 9, 2015. Mascaro's attorney again spoke to the City Council. The contract was categorized as for the "engagement of professional services" and the City Council recommended that the contract be awarded to WMI.

On January 8, 2016, the City Solicitor's Office sent WMI the agreement for signature, and the agreement between the City and WMI was entered into on February 15, 2016, providing that, "the Contractor's proposal stipulates the details the Value Added Services that will be provided to the City. These Value Added Services and all costs and pricing submitted by the Contractor in Appendix VI of RFP 2015-24, and as part of the Proposal, shall be included under the terms of the Contract." (Finding of Fact No. 69.)

On January 12, 2016, Appellants filed a complaint and petition for preliminary injunction with the trial court. WMI filed preliminary objections and both WMI and the City filed responses to the petition for preliminary injunction. On February 17, 2016, Appellants amended their complaint and added Jose Mendoza as a plaintiff. On February 23, 2016, a hearing on the original

4

preliminary injunction was held, at which both parties agreed to forego a preliminary injunction and hold a final hearing on the matter.

On March 24, 2016, briefs were filed by all parties and argument was heard to address the legality of the request for proposal process under the City's Home Rule Charter and Administrative Code. On May 10, 2016 the trial court denied Appellants' request for a permanent injunction. On May 19, 2016, Appellants filed a post-trial motion, which was denied on September 19, 2016. On October 18, 2016, Appellants filed a notice of appeal.

On December 15, 2016, Appellants appealed to this Court.[1]

## Discussion

On appeal, Appellants argue that under section 815 of the City's Home Rule Charter, the City was required to utilize a competitive bid process to award contracts. Appellants contend that the bidding process is synonymous with competition, and that title of the statute, "Bidding Process," evidences that the intent was to provide the purchase of goods and services pursuant by a public bid solicitation. Appellants cite the 1997 amendments to the Home Rule Charter, which provided that services in excess of $20,000.00 required the City to solicit bids and award those bids to the lowest responsible bidder. Appellants argue that consideration should be given to both the City's past practice in only awarding contracts through the ITB process and to the fact that municipalities throughout the Commonwealth of Pennsylvania have consistently awarded contracts via public

---

[1] Our scope of review is limited to a determination of whether the trial court "committed an error of law in granting or denying the permanent injunction." *Buffalo Township v. Jones*, 813 A.2d 659, 672 n.4 (Pa. 2002).

bids similar to the ITB process. Appellants further argue that no applicable statutes permit contracts to be awarded via an RFP process and that the RFP process is not a competitive process as it can be prone to favoritism and corruption, regardless of whether the City acted in good faith.

The City argues that, as a home rule municipality, it has broad powers to arrange its local governmental affairs in any manner not inconsistent with the Pennsylvania Constitution and other applicable state laws, and that nothing prohibited the City from utilizing a competitive RFP process. The City argues that Appellants' reliance on the fixed public bidding requirements of other boroughs, townships, and municipalities is misguided because those codes do not govern home rule municipalities. The City further argued that the Code does not specifically address what the required process is for awarding a municipal services contract.

While Appellants argue that the title of the statute provides a clear meaning, the City argues that a title cannot detract from the statutory language itself, and that the title here is nonspecific, generic language that requires the establishment of a competitive process. Further, Appellants note that the charter's specific direction that the city council institute "policies and procedures to encourage the use of contemporary purchasing techniques such as a reverse auctioneering and electronic commerce." (Brief for Appellant, at 18.)

The City further argues that Appellants' reliance on a prior 1997 Amendment is misplaced as the argument is neither preserved for appeal nor evidential in this case even if the argument was not waived. The City stated that the 1997 Amendment was not in effect at any relevant time since the charter's current version was adopted in 2008, and that the absence of the language

6

Appellants cite from the 1997 Amendment affirmatively rejects Appellants' argument.

The City alleges that a competitive system is not limited to a traditional ITB, and that, here, the RFP secured the best value for the City by providing the most technological advancements at the lowest cost. The City further alleges that the issue of the competitiveness of the RFP was waived because Mascaro objected to the development of testimony relating to the competitiveness of the RFP process and later expressly abandoned any argument regarding the irregularity of the RFP process itself.

The City contends that the doctrines of laches and unclean hands apply because Mascaro became aware of the City's decision to use the RFP process as early as August 2015. While Mascaro informally objected to the RFP process, it participated in the process and did not judicially challenge it until after the proposal was denied. The City argues that it would be inequitable to reward Appellants' behavior as they were merely short-listed candidates who waited to see whether they would be the ultimate beneficiary of the contract before initiating a legal challenge.

The City further argues that Appellants failed to carry their burden and prove that more harm would result from denying the requested injunctive relief than from granting it. The City argues that Appellants did not present any evidence of harm and that the City would suffer significant harm because, if the injunctive relief was granted, the City would have to enter into an emergency contract at a cost of approximately $175,000.00 per month and initiate a new bidding process. Thus, it argues, this harm outweighs any harm Appellants may have suffered.

7

Similarly, WMI argues that the trial court correctly denied Appellants' request for permanent injunction because they did not satisfy the three elements needed for injunctive relief.

WMI first argues that Appellants did not show a clear right to relief because Appellants cannot show that the City's laws required a sealed bid process as there is no support in relevant statutes. WMI relies on the City's Home Rule Charter, which grants the City the power to liberally construe a statute's terms regarding contracts for services, and argues that the City is only required to utilize a competitive process and demonstrate broad solicitation of supplies and opportunities to participate in the process, which occurred here. WMI contends that Appellants overlooked what makes a process competitive and whether the RFP process the City utilized was competitive. WMI contends that the measure of competitiveness is an absence of favoritism and corruption and that this process lacked both and, further, that Appellants were silent on how any characteristics of the RFP process encouraged or evidenced favoritism or corruption. WMI further contends that RFPs encourage and facilitate competition and that this process has the same practical effect as a traditional ITB process. WMI states that Appellants failed to allege how WMI's proposal was deficient or how WMI had an advantage.

WMI next contends that there is not an urgent necessity to avoid an injury that cannot be compensated for by damages because Appellants did not suffer an injury. More specifically, WMI contends that Appellants cannot allege that they, as taxpayers, have been harmed because WMI was the lowest responsible proposer and that there was no evidence that taxpayer dollars would have been saved through a new bid solicitation process. Further, WMI contends that any alleged injury is not urgent because Appellants were on notice of the RFP

8

process since September of 2015; participated in the process, albeit with reservations; and did not file for injunctive relief until after they were not awarded the contract. WMI contends that this delay results in a bar by the equitable doctrine of laches. WMI further contends that the delay causes prejudice to WMI because they could lose the costs incurred and future profits if the injunctive relief is granted.

Lastly, WMI contends that a greater injury will not result by refusing to grant relief. More specifically, WMI contends that Appellants made no effort to argue that the balance of harms tips in their favor. On the contrary, WMI contends that they and the City would suffer a greater harm if the injunctive relief is granted. WMI contends they would lose the costs they have incurred as well as future profits. WMI states that they have invested $6.7 million as of June 2016 in reliance on the contract. WMI contends that Appellants have not articulated actual harms, only a general grievance that the RFP process is flawed, and that rather than suing as taxpayers, Appellants are really challenging the process as disappointed proposers who would not have challenged it had they been awarded the contract.

To establish a claim for permanent injunction, a plaintiff "must establish a clear right to relief, that there is an urgent necessity to avoid an injury which cannot be compensated for by monetary damages, and that greater injury will result from refusing rather than granting the relief requested." *Richard Allen Preparatory Charter School v. School District of Philadelphia*, 123 A.3d 1101, 1107 (Pa. Cmwlth. 2015).

In order to determine whether there is a clear right to relief, we must evaluate whether the City was entitled to use the RFP process to award the contract or whether the ITB process was required.

The Third Class City Code[2] states that all contracts greater than $18,500.00 are to be awarded to the lowest responsible bidder after advertising and competitive bidding. 11 Pa. C.S. §11901.1. Appellees argue that the Third Class City Code does not apply here as the City operates under the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§2901-3171. Section 102 of the City of Allentown Home Rule Charter (Allentown Charter) provides the City with "the power to exercise any power or to perform any function not denied by the Constitution of the United States, by the Constitution of Pennsylvania, by act of the General Assembly of Pennsylvania, or by this Charter." (Reproduced Record (R.R.) at 396a.) Section 103 of the Allentown Charter also provides that if no provisions are provided, the powers of the city shall be provided by the City Council. *Id.* Further, section 105 of the Allentown Charter provides that all powers of the City shall be liberally construed in the favor of the City. *Id.*

This Court held in *Bell v. Lehigh County Board of Elections*, 729 A.2d 125 (Pa. Cmwlth. 1999), that the Home Rule Charter and Optional Plans Law and the Allentown Charter supersede the Third Class City Code. Further, in *Ziegler v. City of Reading*, 142 A.3d 119, 133 (Pa. Cmwlth. 2016), this Court held that "[i]n the absence of explicit constraint or collateral effect on another municipality, there will be no conflict between the home rule municipality's actions and the former code provisions, since the latter no longer apply." Further, in *Wecht v. Roddey*, 815 A.3d 1146 (Pa. Cmwlth. 2002), this Court held that "[i]n general, the adoption of a home rule charter acts to remove a municipality from the operation of the Code provisions enumerating the powers of that particular class of municipality."

---

[2]The Act of June 23, 1931, P.L. 932, *as amended, formerly* 53 P.S. §§ 35101–39701, repealed and codified, effective January 25, 2016, 11 Pa.C.S. §§10101–14702.

Section 815 of the Allentown Charter entitled, "Bidding Process," states:

A. Competition Principle

All purchases of materials, supplies, equipment and services by the City government shall be made through competitive processes, with evidence available to demonstrate broad solicitation of suppliers and opportunities for participation in the acquisition process; and the value received for the money paid.

B. Competitive Policies Code

Consistent with applicable Federal and State laws, the Council shall adopt and may amend, by Ordinance, a Code for the establishment, regulation, and maintenance of a competition system; governing the policies necessary to effectively administer a system of competitive purchasing for the City government. This Code may include but is not limited to: 1) establishing varied procedures for types of services or materials to be acquired; 2) setting the dollar limits which would require: a) verbal solicitation of price quotes with a written record; b) written price quotes after informal solicitation; and c) formal public solicitation of written price quotes after public advertising; 3) establishing procedures for determining sole source contract awards; 4) policies regarding minority or local resident preference; and 5) policies and procedures to encourage the use of contemporary purchasing techniques such as reverse auctioning and electronic commerce.

(R.R. at 161a.) In other words, this section provides that services purchased by the City shall be purchased via "competitive processes" and that a code shall be adopted for the "establishment, regulation, and maintenance of a competition system." *Id.*

Competitive procedures the City must abide by in awarding contracts are governed by section 130.16 of the City of Allentown Administrative Code (Administrative Code), stating, in part:

11

A. Administration

1. Contract administration for the City including but not limited to authority as to preparation of specifications, letting of bids, award of contracts and payment of bills, shall be vested in the Mayor and the Department of Finance to be exercised in accordance with procedures adopted by the Mayor, on file with City Council, and consistent with the requirements set forth herein.

(a) For the award of contracts or the engagement of professional services, coordination with and approval by Resolution of City council prior to contract or engagement execution is required. ...

(b) For the award of all contracts over $40,000 that are required to be bid, recommendation of the lowest responsible bidder by the Department of Administration and approval by Resolution of City Council prior to contract execution are required.

(c) For all contracts over $40,000 that are required to be bid whenever an increase by 10% or more is recommended by the Administration, resubmission to City Council and approval by Resolution prior to execution of any increase are required.

(d) - (g) ...

(h) All bid, contract and engagement contracts with the exception of legal counsel exempt under the provisions of the Home Rule Charter shall contain language noting such engagement is subject to Council approval by resolution at a public meeting.

(R.R. at 163a-66a.)

Here, as the trial court correctly found, a contract for solid waste and recyclable collection is a service contract, not a contract for professional services, and, therefore, is not a contract delineated in Section 130.16(a). Further, as the trial court stated, no evidence was submitted to support that the service contract falls under subsection (c). Therefore, in order to determine whether a contract for services falls under subsection (b), we look to the procedures specific to bids under section 130.16B of the Administrative Code, stating:

12

B. Bidding Process

1. Whenever the estimated cost of any construction, erection, installation, completion, alteration, repair of, or addition to, any project subject to the control of the City shall exceed Forty Thousand ($40,000) Dollars; it shall be the duty of the City to have such work performed pursuant to a contract awarded to the lowest responsible bidder, after advertisement for bids. Every such contract shall contain a provision obligating the contractor to the prompt payment of all material furnished, labor supplied or performed, rental for equipment employed, and services rendered by public utilities in or in connection with the prosecution of the work, whether or not the said material, labor, equipment or service enter into and become component parts of the work or improvement contemplated. Such provision shall be deemed to be included for the benefit of every person, partnership, association or corporation who, as subcontractor or otherwise, has furnished material, supplied or performed labor, rented equipment or services in or in connection with the prosecution of the work as aforesaid, and the inclusion thereof in any contract shall preclude the filing of any such person, partnership, association or corporation of any mechanics' lien claim for such material, labor or rental of equipment.

2. Whenever the estimated costs of any purchase of supplies, materials or equipment or the rental of any equipment, whether or not the same is to be used in connection with the construction, erection, installation, completion, alteration, repair of, or addition to, any project subject to the control of the City, shall exceed Forty Thousand ($40,000) Dollars, it shall be the duty of the City to have such purchase or rental made pursuant to a contract awarded to the lowest responsible bidder, after advertisement for bids...

a. The City shall not evade the provisions of subsection (a) or (b) as to advertising for bids by purchasing materials or contracting for services piecemeal for the purpose of obtaining prices under Forty Thousand ($40,000) Dollars upon transactions which should, in the exercise of reasonable discretion and prudence, he

conducted as one transaction amounting to more than Forty Thousand ($40,000) Dollars,
b. Written or telephonic price quotations from at least three (3) qualified and responsible contractors or vendors shall be requested for all contracts that exceed Ten Thousand ($10,000) Dollars but are less than the amount requiring advertisement and competitive bidding or, in lieu of price quotations, a memorandum shall be kept on file showing that fewer than three (3) qualified contractors exist in the market area within which it is practicable to obtain quotations.

(R.R. at 163a-66a.)

As the trial court correctly held, the procedure specific to bids only applies where the "estimated cost of any construction, erection, installation, completion, alteration, repair of, or addition to, any project subject to the control of the City shall exceed Forty Thousand ($40,000) Dollars." (R.R. at 164a.) Here, the solid waste and recyclable collection contract is not a construction project or erection or installation project, and it neither involves the completion, repair, nor addition to any project. Therefore, contrary to Appellants' argument that the ITB process was required, it is a service contract not listed in the categories of contracts that require a bid under section 130.16B of the Administrative Code.

While Appellants argue that the 1997 Amendments require the City to solicit bids where the services are in excess of $20,000.00, this argument was not raised with the trial court and is therefore waived. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *Glencannon Homes Association v. North Strabane Township*, 116 A.3d 706, 724-25 (Pa. Cmwlth. 2015). However, even if Appellants' argument was raised, it is misguided. The language Appellants cited from the 1997 Amendments was not in effect at any relevant time throughout the RFP process. The City's current charter was adopted in 2008, and did not include the language Appellants cited. Intent is

14

evidenced by enacted law, not a prior, rejected version of the law. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 844 (Pa. 2013).

Appellants argue that the RFP process is not a competitive process under section 815 of the Home Rule Charter. However, Appellants did not raise the issue of the RFP's competitiveness with the trial court, but rather, they objected to the development of testimony relating to the competitiveness of the RFP process. (R.R. at 285a-90a.) As such, the issue of competitiveness under section 815 is also waived. *Glencannon Homes Association*, 116 A.3d at 724-25.

Because this is governed by the Administrative Code and section 130.16 does not require the waste contract to be bid, the trial court did not err in denying Appellants' request for a permanent injunction.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solid Waste Services, Inc. d/b/a : 
J.P. Mascaro & Sons and M.B. : 
Investments and Jose Mendoza, : 
               Appellants : 
                     :   No.  1748 C.D. 2016
           v. : 
                     : 
City of Allentown and Waste : 
Management of Pennsylvania, Inc. : 

## ***ORDER***

AND NOW, this 20th day of July, 2017, the order of the court of Common Pleas of Lehigh County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge